FILED

2014 Sep-10  PM 03:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| YOLANDA TURNER, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | |
| | } | 2:13-CV-823-WMA |
| UNITED PARCEL SERVICE, | } | |
| | } | |
| Defendant. | } | |

**MEMORANDUM OPINION**

Plaintiff Yolanda Turner ("Turner") brings this action against defendant United Parcel Service, Inc. ("UPS"), alleging disability discrimination under the Americans with Disabilities Act and gender discrimination under Title VII of the Civil Rights Act of 1964. UPS, pursuant to Fed. R. Civ. P. 56, has moved for summary judgment on both of Turner's claims. This court has jurisdiction under 28 U.S.C. § 1331. For the reasons stated below, UPS's motion is due to be granted.

**SUMMARY OF UNDISPUTED FACTS**

Turner has been a UPS employee since 1990. She has held her current position of Human Resources Supervisor since 2006, in the company's Birmingham-Roebuck location. Her immediate supervisor is Area Human Resources Manager Lonzell Wilson, a male. As a Human Resources Supervisor, Turner is responsible for the human resources needs of four UPS facilities, primarily relating to recruiting, hiring, and employee relations. As listed by UPS, the essential

1

functions of the position include, among others, working in a seated position for "9-10 hours per day, 5 days per week"; reporting to work "on a regular and timely basis"; working "additional hours depending on service needs"; and possessing the cognitive ability to "concentrate, memorize, and recall." (Doc. 19-2 at 11).

Turner suffers from fibromyalgia, migraine headaches, cervical degenerative disc disease, depression, and anxiety. Because of these conditions, UPS approved Turner for intermittent leave in accordance with the Family and Medical Leave Act. Because of her continuing health issues, however, Turner approached Lonzell Wilson concerning a permanent change in her schedule, requesting "some flexibility in the morning" start time. (Doc. 19-1 at 164:19-21). Wilson advised Turner that she must submit an ADA accommodation request in order to receive such an accommodation; otherwise, she must continue to use her allotted FMLA leave time.

Pursuant to UPS's ADA protocol, Turner submitted a request for accommodation on June 12, 2012, whereupon UPS requested Turner to submit paperwork from her physician, which she did on July 10, 2012. The Request for Medical Information form, completed by Dr. John Riser (Turner's neurologist), stated that Turner was not currently able to perform all the functions of her position, as defined by the Essential Job Functions list. Specifically, Dr. Riser stated that Turner had difficulty with concentrating and

memorizing and recalling information; that she should avoid early morning work hours (as this increased Turner's fibromyalgia symptoms); that she should have significant time for rest and flexible work hours (for doctor's appointments and otherwise); and that she should avoid working long hours. (Doc. 19-2 at 7-9). Dr. Riser also advised that Turner could perform her job duties "within restrictions," including flexible work hours, time off for appointments, elimination of fluorescent lighting, and the ability to work from home. (Doc. 19-2 at 9).

Upon receiving this information, UPS determined that Turner possibly had a condition qualifying as a disability under the ADA. UPS then scheduled what is known as a "checklist meeting" with Turner. UPS describes the meeting as an opportunity "to review her medical restrictions and discuss potential reasonable accommodations that would enable her to perform the essential functions of her current position or another position at UPS." (Doc. 18 at 7). In reality, the only "discussion" that occurred at the meeting was a reading of the questions and answers on a form that UPS requested Turner to fill out. (Doc. 19-1 at 199:22-24). On the form and during the meeting, Turner reported that fatigue and pain made it difficult to get up in the mornings and that she had difficulty concentrating and remembering things. Turner requested accommodations in the form of a flexible work schedule, time off to attend appointments, elimination of fluorescent lights in her

office, periodic rest breaks, and the right to work from home. (Doc. 26-3 at 11, 13).

Based on the checklist meeting, UPS determined that Turner was unable to perform the essential functions of a Human Resources Supervisor or any other available position,[1] either with or without reasonable accommodations. UPS thereupon sent Turner home and told her to apply for short-term disability benefits.

Turner grudgingly began a leave of absence on July 18, 2012. She applied for short-term disability benefits through AETNA, the third-party administrator of UPS's short-term disability program. She was initially denied short-term disability, though her appeal was successful, allowing her to receive benefits for the period of July 18, 2012, to October 17, 2012.[2]

After the initial denial of disability benefits, Turner, on September 21, 2012, filed a Charge of Discrimination with the EEOC, alleging discrimination based on disability and gender. (Doc. 1-1). She received a "right to sue" letter on February 1, 2013. (Doc. 1-2).

In January of 2013, despite her EEOC complaint, Turner contacted UPS about returning to work. Turner provided UPS with a new Request for Medical Information form that was completed by Turner's rheumatologist, Dr. Elizabeth Perkins. Dr. Perkins stated

---

[1]Turner requested that only full-time positions in the Birmingham area be considered as a potential accommodation. (Doc. 26-3 at 12).

[2]Turner did not actually return to work until April 22, 2013.

that Turner was not currently able to perform all of the functions of her position — namely, that Turner was unable to properly concentrate, memorize or recall information, or work more than an eight-hour shift. Dr. Perkins advised that Turner required a daylight shift with a flexible start time, limited to eight hours with a 30-minute break. Starting after 8 am and requiring a flexible work schedule were deemed to be permanent restrictions. (Doc. 26-3 at 40-41).

Following receipt of this form, UPS conducted another checklist meeting with Turner, who once again requested a flexible work schedule, indicating that she could work up to eight hours per day, so long as those hours were between 7 AM and 7 PM. (Doc. 26-3 at 45-48). She also requested to be allowed to work from home. UPS reviewed this information and again determined that Turner was not able to perform the essential functions of the HR Supervisor or any available position, with or without reasonable accommodations. UPS then informed Turner that no positions were available.

On March 8, 2013, after receiving her "right-to-sue" letter but before she filed this suit, Turner submitted a work release form to UPS, completed by Dr. Perkins, indicating that Dr. Perkins had reviewed the essential functions of Turner's position and was releasing her to return to work on March 18. (Doc. 19-2 at 54).

 UPS then required Turner to submit to an examination by its doctor, Dr. Michael Cloyd, because previous documents from Dr.

5

Perkins indicated that Turner's restrictions were permanent. Dr. Cloyd examined Turner on March 20, 2013, and initially reported that Turner must avoid fluorescent lighting and prolonged sitting or standing, must work a daytime shift, and must not lift more than 10-20 pounds repetitively. (Doc. 19-5 at 39). After receipt of this report, UPS sought clarification from Drs. Cloyd and Perkins. Dr. Perkins indicated that "decreased exposure to fluorescent lighting in her personal office would be helpful," and frequent lifting and strenuous movement (stooping, squatting, and climbing stairs) should be avoided, but otherwise Turner could return to work without restrictions. (Doc. 19-5 at 50). Based on this clarification, UPS allowed Turner to return to work as a Human Resources Supervisor, and she did so on April 22, 2013. UPS replaced the lights in her office upon her return but made no other accommodations.

After returning to work, Turner filed suit in this court on May 1, 2013, alleging discrimination based on disability under the Americans with Disabilities Act, and based on gender under Title VII of the Civil Rights Act of 1964. It is impossible to tell from the pleadings whether Turner is pursuing a claim under a mixed motive theory or under alternative theories. UPS moved for summary judgment on both claims on June 26, 2014.

## CONCLUSIONS OF LAW

Summary judgment is appropriate when "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "examine the evidence in the light most favorable to the non-moving party," drawing all inferences in favor of such party. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Because the court finds that there is no genuine dispute as to any material fact and UPS is entitled to judgment as a matter of law on both claims, summary judgment is due to be granted.

## A.    Turner's ADA Claim

Title I of the ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability" in any one of a number of employment areas. 42 U.S.C. § 12112(a) (2012). Discrimination is defined to include failing to make reasonable accommodations to the known limitations of a qualified individual, unless doing so would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A). Thus, in order to establish a prima facie case of discrimination under the ADA, Turner must prove that "(1) [s]he has a disability; (2) [s]he is a qualified individual; and (3) [s]he was subjected to unlawful

discrimination because of [her] disability." *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 (11th Cir. 1997).

UPS does not deny that Turner satisfies the first prong at this stage but challenges Turner's ability to prove the second and third. Because Turner cannot establish that she is a qualified individual under the statute or that UPS unlawfully discriminated against her, Turner's ADA claims fails.

### 1.   Qualified Individual

Under Title I of the ADA, a "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (2012). Under this definition, if Turner cannot perform the essential functions of her position, even with reasonable accommodations, she is not a "qualified individual" and the ADA offers her no protection. *See Holly v. Clairson Industries*, 492 F.3d 1246, 1256 (11th Cir. 2007). This court will first determine the essential functions of her position, and then determine whether Turner was capable of performing them, either with or without reasonable accommodations.

### a.   Essential Job Functions

The essential functions of a job are the "fundamental job duties of the employment position the individual with a disability holds or desires," but not the "marginal functions of the

position." 29 C.F.R. § 1630.2(n)(1) (2014). Among other reasons, a function may be deemed essential if "the reason the position exists is to perform that function," there are a "limited number of employees available among whom the performance of that job function can be distributed," or the function is "highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." 29 C.F.R. § 1630.2(n)(2).

"[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential . . . ." 42 U.S.C. § 12111(8). Other evidence of essentiality includes job descriptions prepared before advertising or interviewing for the position, the amount of time spent performing the function, the consequences of not requiring the individual to perform, the terms of a collective bargaining agreement, and the work experience of past or current employees in the same or a similar job. 29 C.F.R. § 1630.2(n)(3).

UPS has a prepared list of essential job functions that it provided to each of the physicians to aid in their opinions as to Turner's ability to work. (Doc. 19-2 at 11). UPS contends that working 9-10 hours per day; reporting to work on a regular and timely basis (by 8 AM); the ability to work additional hours; and the ability to concentrate, memorize, and recall are all essential functions of Turner's position, just as for all full-time non-operations supervisor positions. Turner is also solely responsible

for facility tours, interviewing, and hiring for many workers in her facilities. (Doc. 26-2 at 79:5-6, 149:3-7).

UPS's view that these functions are all essential is entitled to "substantial weight in the calculus," *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1233 (11th Cir. 2005), but at the summary judgment stage, "this factor alone may not be 'conclusive,'" *Holly*, 492 F.3d at 1258 (quoting *D'Angelo*, 422 F.3d at 1233). Even if such evidence is not conclusive, it is sufficient upon which to grant summary judgment unless Turner "present[s] affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

Turner does not appear to challenge whether the functions listed above are essential to her job and presents little to no evidence that could support such a contention.[3] Therefore, this court finds that no dispute as to material fact exists on the issue and considers the functions listed above and on UPS's Essential Job Functions sheet to be essential.

### b.   Turner's Ability to Perform

As stated above, a qualified individual must be able to perform the essential functions of her position, either with or

---

[3]The only evidence presented by Turner that is arguably on topic is her assertion that Mike Johnson, another HR Supervisor in a different facility, was given flexibility in his work schedule because of long-term medical issues. (Doc. 19-1 at 279:3-10). Turner, however, only presents this evidence for separate purposes, and it is in any case insufficient standing alone to allow a reasonable jury to find the listed functions to be nonessential; therefore, the evidence is insufficient to raise a genuine dispute of material fact. *See Ellis v. England*, 432 F.3d 1321, 1325-26 (11th Cir. 2005).

without reasonable accommodations granted by the employer. 42
U.S.C. § 12111(8). Therefore, Turner "must show either that [s]he
can perform the essential functions of [her] job without
accommodation, or, failing that, show that [s]he can perform the
essential functions of [her] job with a reasonable
accommodation." *Davis v. Florida Power & Light Co.*, 205 F.3d 1301,
1305 (11th Cir. 2000).

UPS has presented evidence that, because of Turner's
conditions, she had difficulties arriving at work on time,
concentrating, and memorizing and recalling information. (Doc. 19-2
at 8, 12, 14.). Turner's doctors also advised UPS that she should
avoid working early morning hours and needed a flexible work
schedule. Most if not all of these difficulties, however, conflict
with the essential functions of her job as an HR Supervisor, and
thus would prevent her from performing them.

Turner's only evidence to the contrary are her statements that
these issues are only based upon a "worst-case day scenario,"
meaning that these problems only arose occasionally, so on most
days she could perform the essential functions of the position
without issue.[4] (Doc. 19-1 at 198:25). The problem here is that

---

[4]In its reply brief, UPS seeks to discredit this testimony in its
entirety because it is contradicted by medical evidence Turner provided to UPS
from her doctors. (Doc. 32 at 8). In support, UPS cites cases for the
proposition that an employer is entitled to accord conclusive weight to
medical evidence from a plaintiff's physicians, even over contrary assertions
from the plaintiff herself. *See, e.g., Davis v. Lockheed Martin Operations
Support, Inc.*, 84 F. Supp. 2d 707, 712 (D. Md. 2000). Particularly at the
summary judgment stage, this court does not find such weighing and favoring of
particular evidence to be proper. *See Tolan*, 134 S. Ct. at 1866 ("[A] 'judge's

11

this argument ignores the fact that her consistent and dependable presence is in itself an essential function of the position. (Doc. 26-2 at 78:20-79:11). For example, Turner is the sole person responsible for facility tours, interviewing, and hiring of preload (early-shift) workers at the Roebuck UPS facility. (Doc. 26-2 at 79:5-6, 149:3-7). It is therefore essential that Turner be present and prompt, whether she is having a good health day or a "worst-case day."[5] Thus, even though she may be able to perform the functions of the position most of the time, this part-time known inability still renders her unable to perform the essential functions of her position without an accommodation.

Further, the accommodations suggested by Turner do not qualify under the ADA as reasonable. "An accommodation is reasonable, and thus required under the ADA, only if it allows the employee to perform the essential functions of the job." *Earl*, 207 F.3d at 1365. This is so because a contrary rule would require employers to eliminate aspects of a job that are deemed essential; but under the ADA, "employers are not required to transform the position into another one by eliminating functions that are essential to the nature of the job as it exists." *Lucas v. W.W. Grainger, Inc.*, 257

---

function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'") (quoting *Anderson*, 477 U.S. at 249).

   [5]This is not to say that intermittent leave is impermissible, since Turner has been properly approved for intermittent FMLA leave when needed. This is only to say that, for purposes of a permanent ADA accommodation, prompt presence cannot be treated as anything but essential to the position.

F.3d 1249, 1260 (11th Cir. 2001).

Turner "bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows [her] to perform the job's essential functions." *Id.* at 1255-56. In this case, Turner has suggested two accommodations: modifications to her schedule and changing of light bulbs in her office. (Doc. 25 at 19). As to changing of the light bulbs, it is a simple accommodation (and one that was actually done upon Turner's return to work), but it would not in any way alleviate Turner's problems with consistently reporting to work on time; standing alone, then, it does not constitute a reasonable accommodation because it would not enable her to perform all the essential functions of her position.

A shortened and flexible schedule, on the other hand, is not a reasonable accommodation at all — allowing this schedule change would not enable Turner to perform the essential functions of her job; rather, it would thwart such performance. As already decided, reporting to work promptly and reliably is an essential function of the position because of Turner's admitted responsibilities. Instead of allowing her to perform the job's essential functions, this accommodation would impermissibly change the position's essential functions and force UPS to transform her position, which the ADA explicitly does not require employers to do. *Lucas*, 257 F.3d at 1260.

Because of this, Turner could not perform the essential

functions of the HR Supervisor position, either with or without reasonable accommodations, so she is not a "qualified individual" under the statute, and her ADA claim fails.

### 2.   Discrimination Because of a Disability

UPS flatly denies that it discriminated against Turner, an absence of motive that would negate the third requirement for liability under the ADA. An employer may discriminate against an individual in several different ways, but at issue in this case is whether UPS discriminated against Turner by "not making reasonable accommodations to the known physical or mental limitations of an . . . employee, unless [UPS] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). Again, "[a]n accommodation is 'reasonable' and necessary under the ADA only if it enables the employee to perform the essential functions of the job." *Lucas*, 257 F.3d at 1259-60. "The plaintiff retains at all times the burden of persuading the jury that reasonable accommodations were available." *Holbrook*, 112 F.3d at 1526.

Turner's claim fails under this prong for much the same reason as under the "qualified individual" prong — no accommodation exists that would enable her to perform the essential functions of her position, meaning no accommodation is reasonable. As stated above, allowing Turner a flexible work schedule would be in irreconcilable conflict with the essential functions of the job — primarily the

responsibility to be promptly and reliably present. Because of this, Turner has failed to satisfy her burden of identifying a reasonable accommodation, so UPS could not possibly have discriminated against her by failing to provide such a nonexistent accommodation. Therefore, Turner cannot satisfy the third requirement of liability under the ADA.[6]

Turner claims that UPS failed to reasonably accommodate her by failing to engage in a true "interactive process" as required by the ADA. (Doc. 25 at 23-24). Assuming *arguendo* that such a failure occurred,[7] such failure still does not constitute a violation of the ADA, and thus does not save her cause of action. *See McKane v.*

---

[6]UPS claims that it reasonably accommodated Turner by allowing her a leave of absence, which it contends is almost a *per se* reasonable accommodation. Several of the cases UPS cited, however, found leave to be an inappropriate accommodation in the situation. *See, e.g., Carroll v. City of Stone Mountain*, 544 Fed. App'x 926, 927 (11th Cir. 2013) ("Although a leave of absence can be a reasonable accommodation, Carroll's requested accommodations in this case were not reasonable."); *Santandreu v. Miami Dade County*, 513 Fed. App'x 902, 905 (11th Cir. 2013) ("While a leave of absence may be a reasonable accommodation, the ADA does not require an employer to provide leave for an indefinite period of time because an employee is uncertain about the duration of his condition."). The cases cited by UPS finding leave to be reasonable are distinguishable from this case because the leave was given for a limited duration and the employer guaranteed the employee's full salary. See *Jackson v. Fujifilm Mfg. USA*, No. 8:09-1328-RBH-BHH, 2010 U.S. Dist. LEXIS 141130, *26 (D.S.C. June 18, 2010); *Carter v. First Energy Nuclear Operating Co.*, No. 1:06-CV-2137, 2007 U.S. Dist. LEXIS 58586, *28 (N.D. Ohio Aug. 9, 2007). Further, this court could not find leave to be a reasonable accommodation in this case, because a reasonable accommodation must enable the employee to perform the essential functions of the position "presently, or in the immediate future." *Wood v. Green*, 323 F.3d 1309, 1313 (11th Cir. 2003) (quoting *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1226 (11th Cir. 1997)). But no evidence has been presented that leave would have enabled Turner to perform her job's essential functions, especially in light of the undisputed evidence that the conditions were permanent.

[7]UPS contends that the interactive process employed in this case was sufficient, (Doc. 32 at 12-16), and this court reaches no conclusion on the issue, although Turner's criticism of the rather extensive interactive process was that it did not produce the result she wanted.

*UBS Financial Services, Inc.*, 363 Fed. App'x 679, 682 (11th Cir. 2010) ("Furthermore, even assuming that UBS failed to engage in an interactive process, that failure neither amounted to a violation of the ADA nor relieved McKane of his burden of demonstrating the availability of a reasonable accommodation."); *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) ("[W]here a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant."). Turner is required by the ADA to identify a reasonable accommodation independent of any interactive process, but she has failed to do so, thus negating ADA liability.

This court is sympathetic to one of Turner's complaints about UPS's ADA process — that she was told to go home immediately after requesting an ADA accommodation, even though she had been doing her job at the time without major issue and believed herself to still be capable of doing so. Unfair as it may seem, it is simply not a situation the ADA was designed to remedy, since Turner was unable to perform several of the essential functions of her position, and no accommodation from UPS would allow her to do so. The ADA is a limited remedy and simply does not allow courts to "sit as a 'super personnel department that will second-guess an employer's decision.'" *Lloyd v. Housing Auth. of Montgomery*, 857 F. Supp. 2d 1252, 1266 (M.D. Ala. 2012) (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)). Thus, summary judgment on

Turner's ADA claim is due to be granted.

**B.   Turner's Title VII Claim**

Title VII of the Civil Rights Act of 1964 makes it unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1) (2012). To prove such discrimination, an individual may rely on either direct or circumstantial evidence. *Maynard v. Bd. of Regents of Univ. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1288 (11th Cir. 2003). Direct evidence is "'evidence, which if believed, proves existence of fact in issue without inference or presumption.'" *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (quoting *Rollins v. TechSouth, Inc.*, 883 F.2d 1525, 1528 n.6 (11th Cir. 1987)). "In the usual case, however, direct evidence is not present, and the plaintiff must rely on circumstantial evidence to prove discriminatory intent, using the framework established in *McDonnell Douglas Corp. v. Green*." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

In this case, Turner relies on circumstantial evidence, and thus upon the *McDonnell Douglas* burden-shifting method, to prove her claim. Under *McDonnell Douglas*, "the plaintiff has the initial burden of establishing a prima facie case of discrimination." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). If the plaintiff meets this burden, the burden shifts "to the employer

. . . [to] produc[e] legitimate, nondiscriminatory reasons for the challenged employment action." *Id.* at 1528. If the defendant meets this "exceedingly light" burden, *Holifield*, 115 F.3d at 1564 (quoting *Turnes v. Amsouth Bank, NA*, 36 F.3d 1057, 1061 (11th Cir. 1994)), the plaintiff then "bears the burden of showing that the reasons offered were merely pretext," *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). "In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs*, 106 F.3d at 1528.

UPS presents three challenges to the viability of Turner's Title VII claim. Each will be discussed in turn.

### 1.   Exhaustion of Administrative Remedies

UPS first claims that some if not all of Turner's Title VII claim should be dismissed for a failure to exhaust her administrative remedies. "Prior to filing a Title VII action . . . a plaintiff first must file a charge of discrimination with the EEOC." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Anderson v. Embarq/Sprint*, 379 Fed. App'x 924, 926 (11th Cir. 2010).

"[A]llegations of new actions of discrimination are inappropriate," *id.*, but claims are permissible if they "'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint," *Gregory*, 355 F.3d at 1279 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)). "Courts are nonetheless 'extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII],'" so "'the scope of an EEOC complaint should not be strictly interpreted.'" *Id.* at 1280 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460-61, 465 (5th Cir. 1970)).

Under this standard, this court finds that Turner successfully exhausted her administrative remedies. UPS contends that Turner's current allegations go beyond the scope of her EEOC charge, so that her cause of action should be limited appropriately. It claims that the EEOC charge was limited to UPS's alleged "sex stereotyping [of Turner] by requiring her to take a leave of absence." (Doc. 18 at 33). Turner now complains of intimidating and derogatory statements made by her supervisor, Lonzell Wilson. Construing the scope liberally in favor of the non-movant, the EEOC charge contains allegations concerning the exceedingly broad issue of a male-dominated and gender-discriminatory culture. While the charge does not specifically mention conduct by Wilson, it could "reasonably be expected to grow out of the charge of discrimination," so the allegations are not barred. *Anderson*, 379 Fed. App'x at 926.

Similarly, the complaint alleges that "Defendant subjected

19

Plaintiff to intimidation and harassment because of her gender."
(Doc. 1 at 5). Contrary to UPS's argument, harassment by Wilson was
sufficiently alleged by this statement in Turner's complaint, as
well as in the EEOC charge, so the issue is properly before the
court as part of Turner's Title VII claim.

### 2.   Prima Facie Case

> To set out a prima facie case for disparate treatment in
> a [gender] discrimination case, the plaintiff may show
> that: (1) she is a member of a protected class; (2) she
> was qualified for the position; (3) she suffered an
> adverse employment action; and (4) she was . . . treated
> less favorably than a similarly-situated individual
> outside her protected class.

*Bentley v. Orange Cnty.*, 445 Fed. App'x 306, 308 (11th Cir. 2011).
UPS only disputes the third and fourth requirements of the prima
facie case — that Turner was subjected to an adverse employment
action and that by that action she was treated less favorably than
a comparable male employee.[8] Turner fails to establish such a prima
facie case.

### a.   Adverse Employment Action

UPS first argues that Turner did not suffer an adverse
employment action. An adverse employment action is "a serious and

---

[8]UPS also sets forth a cursory argument that Turner was not qualified
for her position. This argument, however, appears with no citation of
authority and is entirely set out in a footnote. This court will not consider
such an argument and deems it waived. *See Mock v. Bell Helicopter Textron,
Inc.*, 373 Fed. App'x 989, 992 (11th Cir. 2010) ("[B]ecause Bell mentions
its Rule 60(b)(5) argument in passing in a footnote only and does not
elaborate on it in any further detail in either one of its briefs, we deem
this argument waived."); *PeoplesSouth Bank v. Farmer & Malone, P.A.*, 542 Fed.
App'x 810, 812-13 (11th Cir. 2013).

material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis omitted). "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* "[W]hether an action is sufficient to constitute an adverse employment action must be determined on a case-by-case basis." *Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)).

UPS claims that Turner's leave of absence did not constitute an adverse employment action because it was an attempt to reasonably accommodate Turner under the ADA and therefore cannot be considered an adverse employment action. But, as reasoned above, the leave was not a reasonable accommodation under the ADA because there is no evidence before the court that the leave would enable Turner to perform the essential functions of her position. Neither this circuit's definition of adverse employment action nor any authority cited by UPS connects ADA accommodations to the determination of adverse employment actions. Thus, the classification of the action under the ADA has no real bearing on an analysis under Title VII.

Judged by the Eleventh Circuit's definition, this court finds

that Turner's forced leave of absence qualifies as an adverse employment action. UPS required Turner to leave work with only the advice to seek short-term disability benefits, a process over which UPS had no control. (Doc. 26-2 at 28:20-29:4, 31:19-21). If AETNA, the ERISA disability benefits administrator, denied Turner's claim, the leave would be unpaid, and even if the claim was approved, she would only receive 100% of her salary for thirteen weeks. (Doc. 26-2 at 28:1-7). The action referring her to her ERISA rights constituted a "serious and material change in the terms . . . of employment," *Davis*, 245 F.3d at 1249, since she was forced to take leave that would have either been unpaid or underpaid, so this act qualifies as an adverse employment action. Turner, then, has satisfied this element of the prima facie case.

### b. Less Favorable Treatment than a Comparator

UPS also contends that Turner has failed to show that she received less favorable treatment than a similarly situated male employee. In order to satisfy this requirement, Turner must present evidence that (1) a similarly situated individual (also known as a comparator) exists, and (2) the comparator received more favorable treatment than Turner. "Summary judgment is appropriate if the plaintiff fails to show the existence of a similarly situated employee, and no other evidence of discrimination is present." *Amos v. Tyson Foods, Inc.*, 153 Fed. App'x 637, 647 (11th Cir. 2005).

In order for another employee to be deemed a comparator,

Turner "must show that the 'employees are similarly situated in all relevant respects.'" *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (quoting *Holifield*, 115 F.3d at 1562). "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004).

Turner has offered Mike Johnson, another Human Resources Supervisor in a different UPS facility, as a would-be comparator. According to Turner, Johnson was permitted to work from home and allowed a flexible schedule as an accommodation. (Doc. 19-1 at 279:3-10). This, however, was simply her deduction based upon hearsay statements by coworkers about Johnson's hours and the fact that Johnson frequently sent late-night emails. (Doc. 19-1 at 279:23-280:6). Turner had no personal knowledge regarding any ADA accommodations granted to Johnson. (Doc. 19-1 at 279:11-18).

This "evidence" fails for a reason beyond its hearsay character. Courts of this circuit require a much higher level of comparability before finding someone to be similarly situated. In *Knight*, the Eleventh Circuit found that two employees guilty of rude and disrespectful conduct toward coworkers were not similarly situated because the plaintiff also had a history of performance and tardiness problems. 330 F.3d at 1317-18. In *Silvera*, two school employees were both found to have decades-old child molestation

convictions, yet only one was fired. *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253 (11th Cir. 2001). The Eleventh Circuit still found the two not to be similarly situated, because the plaintiff had a stronger record of recent convictions. *Id.* at 1259-60.

In this case, Turner has simply not produced evidence for the court to be able to make such a determination, so she has not met her burden. Turner has not presented evidence regarding Johnson's medical condition, whether he was granted ADA accommodations from UPS, or the extent of any such accommodations. Because of this, Turner has not met her burden of showing that a sufficient comparator exists.

Further, the Eleventh Circuit has made clear that the only "evidence" presented regarding Johnson — merely repeating the statements of others while lacking personal knowledge — is insufficient as a matter of law to identify a similarly situated individual. *Amos*, 153 Fed. App'x at 647-48 ("Gilbert, however, did not personally witness anything that substantiates her position, relying entirely on the statements of other workers. Such testimony is insufficient as a matter of law to establish a comparator . . . ."). Therefore, Turner has failed to identify a similarly situated individual, and thus failed to establish a prima facie case of gender discrimination.

### 3.  Pretext

The court will assume **only for the sake of argument** that

24

Turner has made out a prima facie case. Once a plaintiff has established a prima facie case of Title VII discrimination, the burden shifts "to the employer . . . [to] produc[e] legitimate, nondiscriminatory reasons for the challenged employment action." *Combs*, 106 F.3d at 1528. This burden on the defendant is "'exceedingly light'" — the reasons must only be identified. *Holifield*, 115 F.3d at 1564 (quoting *Turnes*, 36 F.3d at 1061). UPS has met this burden by stating that it placed Turner on a leave of absence because it determined that she could not perform the essential functions of her position, not because of her gender. (Doc. 19 at 40-41).

After the defendant meets this intermediate burden, "the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext for discrimination." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). "'[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination.'" *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993)).

A plaintiff may prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered

explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 248, 256 (1981). The court is not concerned with whether the defendant's given reasons are wise or fair, but only if they make some sense and are nondiscriminatory. *See Alvarez*, 610 F.3d at 1266 ("We do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive.").

Turner points to two pieces of evidence to prove that UPS's stated reason for placing her on leave after finding that she was unable to perform the essential functions of her position is pretextual. First, Turner contends that UPS summarily found her "too sick to work" and refused to accommodate her, but then changed its position and allowed her to return to work after its own doctor, Dr. Cloyd, examined her. Turner argues that the reason for this inconsistency is that Dr. Cloyd's recommendation made no mention of Turner's fibromyalgia, a condition that predominately affects women, while previous reports mentioned it. This, according to Turner, shows that UPS's proffered nondiscriminatory reason is unworthy of credence and is also direct evidence that UPS's conduct was motivated by discriminatory animus against those with fibromyalgia and, by extension, against women. (Doc. 25 at 26-28). This argument strains credulity. It does not rise to the level of

26

significantly probative evidence. While at the summary judgment stage this court must view all evidence in the light most favorable to the non-movant, the court is not required to accept the non-movant's tortured characterization of the evidence. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir. 1994) ("Evidence is viewed in a light most favorable to the nonmoving party; this, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments.") (internal citations omitted).

Turner claims that the only difference between Dr. Cloyd's recommendation and that of previous doctors is that Dr. Cloyd did not mention fibromyalgia in his report, but the record clearly shows other key differences. Most notably, the previous medical recommendations stated that Turner needed a flexible work schedule, with one even calling the restriction permanent. (Doc. 19-2 at 8, 33-34). Both reports also mentioned Turner's issues with cognitive processes, while Dr. Cloyd's recommendation did not. (Doc. 19-5 at 39). Further, UPS presented uncontroverted evidence that it sought further clarification from Drs. Cloyd and Perkins before allowing Turner to return to work, and Dr. Perkins stated that the only accommodations needed by Turner were decreased exposure to fluorescent lighting and avoidance of heavy lifting. (Doc. 19-5 at 50). Thus, Turner's assertion that a fibromyalgia diagnosis is the only difference in the recommendations is unsupported by the

record, so the suggested inconsistency and discriminatory motive do not exist, much less show any pretext.

Second, Turner contends that UPS's denial of accommodations to her while allowing accommodations to Mike Johnson is proof of discrimination based on gender. Turner states that Johnson frequently sent late-night emails and she heard from coworkers that he sometimes came in late because of the heat. (Doc. 19-1 at 279:23-280:6). From this, Turner concludes that Johnson was given an accommodation. (Doc. 19-1 at 279:3-10). This, on its own, does not constitute "significantly probative evidence" required to survive summary judgment. *Brooks*, 446 F.3d at 1163. Turner presents no evidence regarding the exact nature of Johnson's medical conditions, the accommodations he requested, or the ways in which UPS actually accommodated him. On this scant record, this court is simply unable to locate an evidentiary basis upon which a jury could find or be allowed to find a discriminatory motive. Turner has failed to present significantly probative evidence that UPS's proffered facially legitimate reasons for its actions are pretextual. Therefore, summary judgment is proper on Turner's Title VII claim.[9]

---

[9]Although there is no prohibition against a plaintiff's mounting separate and distinct claims of wrongful conduct by an employer based on the same set of facts, Turner's ADA claim is hard to reconcile with her Title VII claim. This anomaly inherent in a mixed motive case was not a factor in this court's analysis of either theory of liability.

**CONCLUSION**

Because there is no genuine dispute as to any material fact and UPS is entitled to judgment as a matter of law on both of Turner's claims, summary judgment is due to be granted. A separate order will be entered.


DONE this 10th day of September, 2014.



WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE